U.S. DEPARTMENT OF VETERANS
AFFAIRS, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

No. 92–1213.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 18, 1993.

Decided Nov. 12, 1993.

Jonathan R. Siegel, Atty. U.S. Dept. of
Justice, argued the cause for petitioner. On
the briefs were William Kanter and E. Roy
Hawkens, Attys., U.S. Dept. of Justice.

William R. Tobey, Deputy Sol., Federal
Labor Relations Authority, argued the cause
for respondent. With him on the brief were
David M. Smith, Sol., Federal Labor Rela-
tions Authority, and Pamela P. Johnson,
Atty., Federal Labor Relations Authority.
William E. Persina and Wendy B. Bader,

**124**

Attys., Federal Labor Relations Authority, entered appearances.

Mark D. Roth, Gen. Counsel, and Kevin M. Grile, Asst. Gen. Counsel, American Federation of Government Employees, AFL–CIO, were on the brief for amicus curiae.

Before: WALD, EDWARDS, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The Department of Veterans Affairs ("Petitioner" or "VA") challenges a determination by the Federal Labor Relations Authority ("FLRA" or "Respondent") that certain collective bargaining proposals submitted to the VA by the National Association of Government Employees, Local R1–109 ("Union") are negotiable.

The Union is the exclusive bargaining representative for, *inter alia*, "hybrid" employees of the Veterans Health Administration ("VHA") at the VA's Newington, Connecticut Medical Center.[1] During mid-term negotiations over the parties' collective bargaining agreement, the Union submitted to the VA twelve proposals concerning procedures to be followed by Professional Standards Boards in reviewing their peers for promotion.[2] The VA refused to negotiate over the proposals,

---

1. "Hybrid" employees currently include "[c]linical or counseling psychologists who hold diplomas as diplomates in psychology from an accrediting authority approved by the Secretary, certified or registered respiratory therapists, licensed physical therapists, licensed practical or vocational nurses, pharmacists, and occupational therapists." 38 U.S.C. § 7401(3).

2. The Union's submission provides in relevant part:

> The purpose of this agreement is to outline procedures to be utilized by Professional Standards Boards ( ["PSB's"] ) when reviewing eligible *bargaining unit employees for pro-*motions.
>
> . . . .
>
> . . . The PSB's act as an examining body in applying the aforementioned [promotion] criteria.
>
> . . . .
>
> The parties hereby agree as follows:
> 1. This agreement shall apply to all bargaining unit employees whose promotions are subject to Professional Standards Boards.
> 2. All actions taken under this agreement will be job related, without any discrimination, and shall be consonant with law, applicable selection guidelines, and this agreement.
> 3. To be eligible for promotion to the next higher grade an employee must:
>   a. have served the required time in grade; and
>   b. have met the established qualifications/criteria, as determined by the examining board.
> 4. To insure equal treatment of individuals the criteria for promotions shall be standardized to the extent possible, and shall be sufficiently specific to prevent subjective application. A copy of this criteria [sic] shall be given to employees upon entering the review period, for example, upon attaining a GS–3, the employee will receive the criteria for achieving the GS–4, upon attaining the GS–

4,. the employee will receive the criteria for achieving the GS–5, and so on.
> 5. No less than 90 days prior to the time the employees meet the time in grade requirement, they shall be appraised [sic] by the appropriate management official, of the preliminary recommendation with respect to promotion.
> 6. No less than 60 days prior to the completion of the time in grade requirements, the preliminary recommendation shall be forwarded to the PSB, by the appropriate management official.
> 7. If the management official forwards a negative recommendation to the Board, the employee shall have 45 days to respond to the recommendation. No action shall be taken by the PSB until the employees [sic] response is received.
> 8. Candidates for promotion will be informed in writting [sic] of the Board's decision within 7 calendar days. *The employee shall be* given written and specific rationale for the decision and copies of appeal rights, including the right to utilize the parties [sic] negotiated grievance procedure.
> 9. The employer shall endeavor to make promotion actions effective at the start of the first pay period following the notice of the PSB, and in any case the employer shall not unreasonably delay the promotion action.
> 10. The employee through the [U]nion, shall have access to any and all records maintained by the PSB, pursuant to the terms of 5 [U.S.C.] § 7114(b)(4).
> 11. Employees who have met the time in grade requirement may be reviewed by the PSB periodically, but not less than every 6 months.
> 12. The Employer shall give consideration to Union nominations of eligible and qualified employees to serve as members of the PSB's.

*National Ass'n of Gov't Employees, Local R1–109,* 44 F.L.R.A. No. 29 at 12–14 (Mar. 13, 1992) . (Appendix).

on the grounds that they infringed upon the exclusive authority of the Secretary of Veterans Affairs to "prescribe[ ]" regulations for the "promotion and advancement" of hybrid VHA employees. *See* 38 U.S.C. § 7403(f)(1)(B) (Supp. III 1991) (incorporating by reference 38 U.S.C. § 7403(c)).[3] The Union filed a negotiability appeal and the FLRA ultimately concluded that the proposals were negotiable because they concerned "matters relating to ... grievance procedures" within the meaning of § 7403(f)(3)'s exception to the Secretary's exclusive authority over promotions. *See National Ass'n of Gov't Employees, Local R1–109*, 44 F.L.R.A. No. 29 (Mar. 13, 1992) ("*NAGE, Local R1–109* "). The VA challenges this determination.

In reviewing the FLRA's determination that the Union's proposals are negotiable under § 7403(f)(3), we examine more generally chapter 74 of title 38, 38 U.S.C. §§ 7401–7474, governing VHA personnel administration, and its relation to chapter 71 of title 5, 5 U.S.C. §§ 7101–7135, governing collective bargaining rights of civil service employees generally. While we analyze the interlocking provisions of title 38, our interpretive approach is ultimately quite simple: we seek to give meaning to § 7403(f)(3)'s express limitation of negotiability to "matters relating to adverse actions, disciplinary actions, and grievance procedures." Because we agree with the VA that proposals relating to peer review promotion procedures rather than grievance procedures are nonnegotiable under § 7403, we remand to the FLRA for a determination of the negotiability of the Union's proposals in light of the interpretation of § 7403 set forth in this opinion.

## I. STATUTORY BACKGROUND

The Department of Medicine and Surgery, now the Veterans Health Administration,[4]

was created in 1946 "to provide a complete medical and hospital service for the medical care and treatment of veterans." 38 U.S.C. § 7301(b). *See* Veterans' Administration, Department of Medicine and Surgery, Pub.L. No. 79–293, 59 Stat. 675 (1946). Because at that time Congress was concerned that the civil service system was insufficiently flexible to accommodate the swift hiring necessary to satisfy the medical needs of returning World War II veterans, it created an independent personnel system for the VHA under title 38. Pub.L. No. 79–293, §§ 2–15, 59 Stat. at 675–79 (codified as amended at 38 U.S.C. §§ 7401–7474). *See* S.REP. No. 858 (1945), *reprinted in* 1945 U.S. CODE CONG. SERV. 956; S.REP. No. 215, 100th Cong., 1st Sess. 145 (1987). The Secretary (then Administrator) of Veterans Affairs was authorized to "prescribe by regulation the hours and conditions of employment" of these employees without regard to "any law, Executive order, or regulation." Pub.L. No. 79–293, § 7(b), 59 Stat. at 677 (codified as amended at 38 U.S.C. § 7421(a)). The specified personnel employed under this independent system are consequently referred to as "nonhybrid" employees because their employment is almost exclusively governed by title 38.[5]

In 1978 Congress passed the Federal Service Labor–Management Relations Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified at chapter 71 of title 5, 5 U.S.C. §§ 7101–7135), providing for collective bargaining rights of civil service employees generally, and establishing the FLRA in order to "carry[ ] out the purpose of ... chapter [71 of title 5]." 5 U.S.C. § 7105. Soon thereafter Congress amended title 38, adding § 4119 (now § 7425), to reemphasize that "where title 5 is 'inconsistent with' title 38, the latter governs." *American Fed'n of Gov't Employees v. FLRA*, 850 F.2d 782, 786

---

**3.** Unless otherwise indicated, references to the United States Code are to the third supplement, 1991, and the parenthetical indication will be omitted.

**4.** *See* Department of Veterans Affairs Health–Care Personnel Act of 1991, Pub.L. No. 102–40, § 2, 105 Stat. 187.

**5.** "Nonhybrid" employees are currently (i) physicians, (ii) dentists, (iii) podiatrists, (iv) optome-

trists, (v) nurses, (vi) physician assistants, and (vii) expanded-function dental auxiliaries. *See* 38 U.S.C. § 7403(a)(2). Since 1946 the *retirement* of all VHA employees has been subject to the title 5 retirement provision governing civil service employees. *See* Pub.L. No. 79–293, § 9, 59 Stat. at 678 (codified as amended at 38 U.S.C. § 7426).

(D.C.Cir.1988) (quoting 38 U.S.C. § 4119 (Supp.IV 1980) (recodified at 38 U.S.C. § 7425)). *See* Veterans Administration Health–Care Amendments of 1980, Pub.L. No. 96–330, § 116(a)(1), 94 Stat. 1030, 1039 (1980). Nonhybrid VHA employees were not to enjoy the collective bargaining rights conferred upon civil service employees under title 5. *Id.* at 786–87; *see also Colorado Nurses Ass'n v. FLRA*, 851 F.2d 1486, 1491–92 (D.C.Cir.1988).

In addition to these "nonhybrid" title 38 employees, Congress in 1983 created a new category of "hybrid" VHA employees who are subject to both title 38 and title 5. *See* Veterans' Health Care Amendments of 1983, Pub.L. No. 98–160, §§ 201, 203(a), 97 Stat. 993, 1000 (codified as amended at 38 U.S.C. §§ 7401(3), 7403(f)(1) & (f)(2)). In creating the category of "hybrid" personnel Congress sought to improve the VHA's ability to recruit and retain certain kinds of health care workers apart from the "nonhybrid" employees governed exclusively by the title 38 personnel system.[6] In 1988 Congress further amended the VHA personnel provisions expressly to provide greater collective bargaining rights for these hybrid employees. *See* Veterans' Benefits and Services Act of 1988, Pub.L. No. 100–322, § 221, 102 Stat. 487, 531 (codified at 38 U.S.C. § 7403(f)(3)). In 1991 Congress conferred, for the first time, certain collective bargaining rights upon nonhybrid employees as well. *See* Department of Veterans Affairs Health–Care Personnel Act of 1991, Pub.L. No. 102–40, § 202, 105 Stat. 187, 200–01 (codified at 38 U.S.C. § 7422). This case involves only the collective bargaining rights of hybrid employees as expressly set forth in § 7403(f)(3).

## II. DISCUSSION

The FLRA and the VA do not dispute that under § 7403, the Secretary need not bargain over the substantive criteria governing appointment, promotion and advancement of hybrid employees, *e.g.*, time-in-grade requirements or qualifications. Nor do they dispute that the Secretary must bargain over the mechanics of grievance procedures (*i.e.*, the filing, processing, or resolving of grievances) even when the grievance procedures include the resolution of promotion-related grievances. *See* Respondent's Brief at 6–7; Petitioner's Brief at 15–18[7]; *United States Dep't of Veterans Affairs Medical Center, Newington, CT*, 37 F.L.R.A. 111 (1990) (arbitration of promotion-related grievance permissible under title 38). The parties do disagree, however, about whether promotion procedures themselves are negotiable, and more generally about the scope of the Secretary's obligation under § 7403(f)(3) to bargain over "all matters relating to ... grievance procedures." 38 U.S.C. § 7403(f)(3).

We note preliminarily that we owe no deference to the FLRA's statutory interpretation where it has endeavored to "reconcile its organic statute [*i.e.*, chapter 71 of title 5— the Federal Service Labor–Management Relations Act] with a[nother] statute [*i.e.*, title 38] not within its area of expertise." *Colorado Nurses*, 851 F.2d at 1488 (citations omitted). *Accord Library of Congress v. FLRA*, 699 F.2d 1280, 1286 n. 29 (D.C.Cir.1983). Consequently, our review of the FLRA's interpretation of the scope of § 7403(f)(3) is *de novo*. *See also Professional Airways Sys. Specialists, MEBA v. FLRA*, 809 F.2d 855, 857–58 & n. 6 (D.C.Cir.1987) (FLRA's refusal to award back pay subject to *de novo* review where decision rested on interpretation of its organic statute and another general statute). In our interpretive exercise, we turn first to the language of the VHA personnel provisions. Because we find the text clear, we allude to the sparse legislative history only as necessary to evaluate arguments raised by the parties invoking its use.

---

**6.** All other VHA health care personnel, *i.e.*, who are neither "hybrid" nor "nonhybrid", are employed under the regular civil service system of title 5. *See generally* S. REP. No. 215, 100th Cong., 1st Sess. 141–45 (1987).

**7.** While in the FLRA proceeding below, the VA did "not concede that ... promotions are grievable under title 5," *NAGE Local R1–109*, at 6, its

brief to this court concedes that "the Union might, consistent with [title 38], submit a proposal relating to the filing, processing, or resolving of grievances concerning the VA's failure to adhere to its promulgated policy regarding the promotion or advancement of hybrid employees." Petitioner's Brief at 16–17 (footnote omitted).

## A. *Grievance Procedures for Hybrid Employees*

As we explain below, under the VHA personnel provisions of title 38, the power of the Secretary of Veterans Affairs to prescribe regulations governing the promotion and advancement of hybrid employees derives from his power over nonhybrid employees. Therefore, we begin by briefly discussing the Secretary's powers over the promotion of nonhybrid employees.

### 1. *Nonhybrid Employees*

Until 1991 the Secretary had no obligation to negotiate any conditions of employment for nonhybrid employees. *See* 38 U.S.C. §§ 4106, 4108(a) (1988) (amended and recodified as 38 U.S.C. §§ 7403, 7421); *Colorado Nurses*, 851 F.2d 1486.[8] Former § 4106(c) provided that the Secretary had the power to "prescribe[ ]" regulations for the promotion of nonhybrid employees, 38 U.S.C. § 4106(c) (1988), and former § 4108(a) underscored that the Secretary's power to "prescribe[ ]" under § 4106(c) existed "[n]otwithstanding any law, Executive order, or regulation." *Id.* at § 4108(a). In 1988, a panel of this court held that under § 4108(a) the conditions of employment of nonhybrid employees were nonnegotiable. *Colorado Nurses*, 851 F.2d at 1492.[9]

8. *Colorado Nurses* was decided prior to recodification and significant amendment of title 38 in 1991. *See* Pub.L. No. 102–40, 105 Stat. 224 (1991). In 1991, 38 U.S.C. §§ 4106(c), 4106(g)(1), and 4106(g)(3) were repealed and reenacted without substantive change, as 38 U.S.C. §§ 7403(c), 7403(f)(1), and 7403(f)(3), respectively. Quotations from the earlier codification are the same as in the recodified version.

9. Section 4108(a) provides:

Notwithstanding any law, Executive order, or regulation, the [Secretary] shall prescribe by regulation the hours and conditions of employment ... [of nonhybrid employees].... 
38 U.S.C. § 4108(a) (1988) (recodified at 38 U.S.C. § 7421(a)).

10. Section 7422 provides in relevant part:

(a) Except as otherwise specifically provided in this title, the authority of the Secretary to prescribe regulations [for nonhybrid employees] under section 7421 of this title is subject

In 1991, Congress amended and recodified the VHA personnel provisions adding § 7422.[10] Subsection (a) of that provision creates a baseline of negotiability of all working conditions for nonhybrid employees. Subsection (b), however, leaves nonnegotiable any matter concerning "(1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under ... title [38]." 38 U.S.C. § 7422(b). It also leaves nonnegotiable grievance procedures relating to these three nonnegotiable subject matters. *Id.* Subsection (d) leaves with the Secretary final authority over the decision of whether any specific matter concerns or arises out of these nonnegotiable subject areas. *Id.* at § 7422(d). Therefore, peer review procedures for the promotion of *non* hybrid employees remain nonnegotiable after the passage of § 7422.

### 2. *Hybrid Employees*

Section 7403 establishes both the Secretary's exclusive power to prescribe regulations for the promotion of hybrid employees generally and explicitly excepts from this power certain negotiable matters. Section 7403(f)(1) provides:

... [T]he Secretary may—

. . . .

to the right of Federal employees to engage in collective bargaining with respect to conditions of employment through representatives chosen by them in accordance with chapter 71 of title 5 (relating to labor management relations).

(b) Such collective bargaining (and any grievance procedures provided under a collective bargaining agreement) in the case of [nonhybrid] employees ... may not cover, or have any applicability to, any matter or question concerning or arising out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title.

. . . .

(d) An issue of whether a matter or question concerns or arises out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title shall be decided by the Secretary and is not itself subject to collective bargaining and may not be reviewed by any other agency.
38 U.S.C. § 7422(a), (b), (d).

(B) use the authority provided in subsection (c) for the promotion and advancement of Department employees serving in such [hybrid] positions.

38 U.S.C. § 7403(f)(1). As discussed earlier, subsection (c) of § 7403, relating to *nonhybrid* employees, provides:

Promotions [of nonhybrid employees] ... shall be made only after examination given in accordance with regulations prescribed by the Secretary. Advancement within grade may be made in increments of the minimum rate of basic pay of the grade in accordance with regulations prescribed by the Secretary.

*Id.* at § 7403(c) (former § 4106(c)). Through this mechanism of incorporation, then, § 7403(f)(1)(B) essentially grants the Secretary the corresponding power to "prescribe[ ]" regulations for the promotion and advancement of hybrid employees. *See id.* at §§ 7403(c), 7403(f)(1)(B). However, this power over the promotion of hybrid employees is limited by § 7403(f)(3) which provides:

Notwithstanding any other provision of ... title [38] or other law, all matters relating to adverse actions, disciplinary actions, and grievance procedures involving individuals appointed to [hybrid] ... positions ... shall be resolved under the provisions of title 5 as though such individuals had been appointed under that title.

*Id.* at § 7403(f)(3). Our task, therefore, is to reconcile § 7403(f)(1)(B) and § 7403(f)(3). Since the parties agree that the Union's proposals relate to neither adverse actions nor disciplinary actions, we focus on the negotiability of matters relating to "grievance procedures." *See NAGE, Local R1–109,* at 6.

In the FLRA's negotiability proceeding, it held the Union's entire array of twelve proposals negotiable under § 7403(f)(3) as "matters *within* or pertaining to the scope of the parties' negotiated grievance procedure." *Id.* at 9 (emphasis added). The FLRA reasoned:

We find that because the proposals address matters that may be grieved under the parties' agreement, the proposals are matters relating to the grievance procedures involving 'hybrid' employees.

*Id.* Put otherwise, the FLRA maintains that procedures relating to the way in which promotions are administered are negotiable as "matters relating to ... grievance procedures," because the violation of these promotion procedures will give rise to grievances. *Id.* at 9–10. The FLRA would seem to equate "matters relating to ... grievance procedures" with matters *subject* to grievance procedures. We strongly disagree with this reading of § 7403(f)(3) in general, and, in particular, do not read § 7403(f)(3) to require negotiation of promotion procedures.

### a. The Baseline of Nonnegotiability of Hybrid Promotions

We held in *Colorado Nurses* that the Secretary's core power under § 4108(a) (now § 7421(a)) to "prescribe[ ]" regulations for employment conditions of *non* hybrid employees rendered such regulations nonnegotiable. We reasoned that "by directing the [Secretary] to prescribe regulations—rather than simply issue or promulgate them—Congress intended that the [Secretary] determine the content of those regulations." *Colorado Nurses,* 851 F.2d at 1489. Moreover, we said that § 4108 "underscores the exclusive nature of the [Secretary]'s authority by exempting its exercise from 'any law, Executive order, or regulation.'" *Id.* We concluded finally that "[t]he purpose of this language is clear: when the [Secretary] prescribes regulations concerning conditions of employment, he is to be unhampered by the range of federal personnel statutes and regulations that might otherwise constrain his authority." *Id.* Nonhybrid employees' conditions of employment were nonnegotiable.

Promotion policies are conditions of employment, *see* 5 U.S.C. § 7103(a)(14), *American Fed'n of Gov't Employees, Local 3884 v. FLRA,* 930 F.2d 1315, 1325 (8th Cir.1991), and § 4108 is "an integral part of an independent personnel system that Congress has placed under the direct control of the [Secretary]," *Colorado Nurses,* 851 F.2d at 1489. Therefore, prior to the 1991 amendments, former § 4106(c) granting the Secretary authority over nonhybrid promotions similarly made nonnegotiable the regulation of nonhybrid promotions. With the addition of § 7422 conferring collective bargaining rights

on nonhybrids in 1991, however, Congress limited the Secretary's power to "prescribe[ ]" nonhybrid conditions of employment generally. But in the same amendment Congress excepted from the new collective bargaining mandate his plenary power to prescribe regulations in three areas: (1) professional conduct or competence, (2) peer review, and (3) the establishment, determination, or adjustment of employee compensation. 38 U.S.C. § 7422(a) & (b). Thus, even after the 1991 amendments, the Secretary can still prescribe, without negotiating, regulations governing, for example, peer review procedures with respect to *non* hybrid employees. Insofar, then, as the Secretary's power over hybrids follows along from his power over *non* hybrids, he would retain the absolute right to prescribe the regulations for *hybrid* promotions involving (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation.[11]

■ As a result of this analysis, we find that regulations "for the promotion and advancement" of hybrid employees are generally nonnegotiable. 38 U.S.C. § 7403(f)(1)(B). From this baseline of nonnegotiability, then, § 7403(f)(3) carves out one further exception: "[n]otwithstanding any other provision of ... title [38]," it says "all matters relating to ... grievance procedures" are negotiable and should be resolved "under the provisions of title 5." *Id.* at § 7403(f)(3). Accordingly, the central goal of our statutory exercise is to give appropriate effect to § 7403(f)(3)'s exception to the nonnegotiability baseline, while still preserving for § 7403 a meaningful scope for its clear nonnegotiability mandate. *See United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (applying principle of statutory construction "to give effect, if possible, to every clause

and word of a statute" (internal quotes and citation omitted)); *Michigan Citizens for an Indep. Press v. Thornburgh,* 868 F.2d 1285, 1293 (D.C.Cir.1989), *aff'd by an equally divided court,* 493 U.S. 38, 110 S.Ct. 398, 107 L.Ed.2d 277 (1989) (per curiam) (holding that agency's construction impermissibly "resulted in 'an effective repeal' of part of the statute, and thereby frustrated the intent of Congress" (quoting *American Fed'n of Gov't Employees, Council of Locals No. 214 v. FLRA,* 798 F.2d 1525, 1529 (D.C.Cir.1986))). We turn, then, to the question of whether peer review procedures for the promotion of hybrid employees are "matters relating to ... grievance procedures" within § 7403(f)(3)'s exception to the general nonnegotiability of promotion regulations.

b. *Negotiability of Grievance Procedures Under § 7403(f)(3)'s Exception to the Baseline of Nonnegotiability*

■ In order to discern the proper interpretation of "grievance procedures" appropriate for resolution by negotiation under title 5, we turn to title 5 itself and its definition of what "grievance procedures" include. Section 7121 of title 5 provides in relevant part:

§ 7121. Grievance procedures

(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability....

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

. . . .

5 U.S.C. § 7121.[12] Reading 38 U.S.C. § 7403(f)(3) in conjunction with 5 U.S.C.

---

11. We assume that in reenacting the VHA personnel provisions in 1991, Congress' retention of relevant statutory terms included their judicial construction in *Colorado Nurses. See Apex Hosiery Co. v. Leader,* 310 U.S. 469, 488, 60 S.Ct. 982, 989, 84 L.Ed. 1311 (1940); *Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2213, 119 L.Ed.2d 468 (1992); *Dart v. United States,* 848 F.2d 217, 229 (D.C.Cir.1988). We know for certain that Congress was aware of this court's interpretation of § 7403(c) in *Colorado*

*Nurses. See* H.R. Rep. No. 466, 101st Cong., 2d Sess. 27–28 (1990), *see also* 137 Cong. Rec. S4542–43 (daily ed. Apr. 17, 1991) (statement of Sen. Cranston, Chairman of the Committee on Veterans' Affairs).

12. Title 38 itself defines grievance procedures similarly as "procedures for the consideration of grievances" when setting forth the Secretary's power to prescribe such procedures for nonhy-

§ 7121, we discern three issues concerning hybrid employees which are subject to negotiation. First, as both parties agree, the procedures for the filing and processing of a grievance are negotiable. Second, questions about the binding arbitration of grievances that are "not satisfactorily settled under the negotiated grievance procedure" are negotiable as well. 5 U.S.C. § 7121(b)(3)(C). Finally, the scope of the grievance procedures may also be negotiated, *i.e.,* which potential grievances shall be "exclude[d] . . . from the application of the grievance procedures." 5 U.S.C. § 7121(a)(2). The necessity of including all three aspects of the grievance procedures within the duty to negotiate satisfactorily explains the expansive language of § 7403(f)(3); not only are grievance procedures, *i.e.,* the procedures for the filing of a grievance to be negotiated, but "all matters relating to . . . grievance procedures" are negotiable, *i.e.,* the scope of grievance procedures and questions concerning the binding arbitration of grievances not satisfactorily resolved through grievance procedures. This reading of § 7403(f)(3) accounts for its expansive phrasing while still maintaining the congressionally mandated division between negotiable and nonnegotiable matters.

### B. *The FLRA's Decision*

■ The FLRA's far-reaching interpretation of § 7403(f)(3)'s negotiability, on the other hand, extends to any procedure the violation of which could give rise to a grievance. Such an interpretation, we fear, would effectively deny the Secretary any sphere of non-negotiability in matters relating to the promotion of hybrid employees. While the FLRA disavows any intent to hold substantive promotion criteria negotiable, the inevitable reach of its interpretation would cover the negotiability of *all* promotion criteria. By the sweeping logic of the FLRA's definition of negotiability, any matter, including any substantive promotion criterion, could become negotiable, because it is a matter that if violated "may be grieved." We reject

this interpretation because it would effectively repeal *in toto* the Secretary's authority to prescribe regulations for the promotion of hybrid employees under § 7403(f)(1)(B).

■ The FLRA implies that its expansive definition of negotiability would be tempered by requiring negotiable proposals to leave reserved management powers undisturbed in "important respects." Respondent's Brief at 33. The proposals at hand, it argues, are negotiable precisely because they properly preserve the Secretary's power to promote hybrid employees in "important respects." *Id.* But while preserving management rights in "important respects" may be a proper standard to determine negotiability under title 5, it is not suitable as the sole criterion for determining whether a proposal relates to grievance procedures under title 38. *Cf. Dep't of Defense v. FLRA,* 659 F.2d 1140, 1153, 1159 (D.C.Cir.1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982) (upholding FLRA's requirement that negotiable proposals under title 5 not prevent management from "acting at all," or, in the alternative, not "directly interfere" with management's reserved powers).[13]

Section 7403(f)(3) provides that only grievance procedures and matters relating thereto shall be governed by title 5. If a proposal does not relate to grievance procedures, it cannot be treated as a grievance procedure simply on the basis that it preserves management powers in important respects. There is no general right under § 7403(f)(3) to bargain over any proposal that leaves management rights significantly undisturbed. Nor does § 7121 of title 5, relating to grievance procedures under title 5, imply such a right. The FLRA would have this court incorporate into title 38 a *different* provision of title 5, namely § 7106(b)(2), which provides that title 5 employees retain the right to negotiate *"procedures* which management officials of the agency will observe in exercising any [reserved management] authority." 5 U.S.C.

---

brid employees. *38 U.S.C. § 7463(a). See also id.* at §§ 7462, 7464.

**13.** We are not concerned here with a requirement that a proposal which all parties have agreed concerns a grievance procedure must, *in*

*addition,* preserve management powers in *significant* respects. The FLRA's argument here posits significant preservation of management powers as a sufficient rather than a necessary condition for a finding of negotiability.

§ 7106(b)(2) (emphasis added). *See Dep't of Defense*, 659 F.2d at 1146. In part because of the difficulty of distinguishing under 5 U.S.C. § 7106(b)(2) between proposals that are procedural from those that are substantive in nature, the FLRA has developed various tests of negotiability under § 7106(b)(2) that require the significant preservation of reserved management rights. *See Dep't of Defense*, 659 F.2d at 1151–52 & n. 64. But the basic fact remains that title 5 rights of *title 5 employees* are more expansive than those of hybrid title 38 title 5 employees in this respect. Hybrid employees have no general right to negotiate procedures governing management's exercise of its reserved rights. Title 38 precludes any wholesale transfer of general rights under title 5 to negotiate procedures governing management's exercise of authority to the hybrid context. In the absence of a specific reference incorporating general title 5 rights into title 38, an extension of title 5 negotiability over and above those involving grievance procedures to the hybrid context would be in direct violation of title 38, *see* 38 U.S.C. § 7425,[14] and unwarranted by the language of title 5 itself, *see* 5 U.S.C. § 7103.[15]

Our textual interpretation is further supported by a proper reading of the legislative history cited by the FLRA. The FLRA contends that when creating the special category of hybrid employees in 1983, Congress did not intend to curtail their collective bargaining rights under title 5. *See* Explanatory Statement of House Bill, Senate Amendment, and Compromise Agreement, *reprinted in* 1983 U.S.CODE CONG. & ADMIN.NEWS 1459, 1468 (1983).[16] It maintains that the report of the Senate Committee on Veterans' Affairs in 1987 reaffirmed Congress' intention to preserve these rights in their entirety and explained that § 7403(f)(3) (then § 4106(g)) was added to accomplish that purpose. *See* S.REP. No. 215, 100th Cong., 1st Sess. 145 (1987). We disagree with the FLRA's reading. Congress itself recognized that soon after creation of the hybrid category in 1983, confusion arose with respect to collective bargaining rights of hybrid employees. *See id.* at 144–45. When Congress got around to the task of clearing up the confusion by adding § 7403(f)(3), it specifically expressed a limited intent to invest hybrid employees with collective bargaining rights under title 5 only for the "resolution of grievance and disciplinary matters." *Id.* at 145.[17]

---

14. Section 7425(b) provides:

Notwithstanding any other provision of law, no provision of title 5 or any other law pertaining to the civil service system which is inconsistent with any [VHA personnel] provision ... shall be considered to supersede, override, or otherwise modify such [VHA personnel] provision ... except to the extent that such provision of title 5 or of such other law specifically provides, by specific reference to a provision of this chapter, or such provision to be superseded, overridden, or otherwise modified.

38 U.S.C. § 7425(b).

15. Title 5 itself limits negotiability of conditions of employment to matters not "specifically provided for by [another] Federal statute." 5 U.S.C. § 7103(a)(14). *See id.* at § 7102(2). Since title 38 specifically provides for the regulation of promotions of hybrid employees, title 5 by its own terms does not apply.

16. The Explanatory Statement provides:

The Committees note that it is not the intent of the provisions of this legislation relating to the ... [hybrid] occupations involved to diminish or impair in any way the rights and protections guaranteed the employees in those occupations under the express provisions of chapter

71 of the title 5, United States Code, relating to federal labor management relations.

Explanatory Statement of House Bill, Senate Amendment, and Compromise Agreement, *reprinted in* 1983 U.S.CODE CONG. & ADMIN.NEWS 1459, 1468 (1983). The Explanatory Statement at the same time affirms:

These provisions would permit the [Secretary] to set rates of pay and qualifications standards for these ... [hybrid] occupations without regard to civil-service laws, rules, and regulations; authorize the [Secretary], when necessary for recruitment and retention purposes, to use additional pay authorities under title 38 to compensate individuals in these ... occupations; and permit the [Secretary] to take action, without such action being statutorily subject to review by the President as under current law, to adjust rates of basic pay for individuals in these occupations when necessary for recruitment and retention purposes.

*Id.* at 1467.

17. The 1987 report of the Senate Committee on Veterans' Affairs purported to "reaffirm" an earlier Congress' "original intent" with reference to hybrid employees, but unequivocally concluded that hybrid employees "will have the full panoply of rights available to title 5 employees *for the resolution of grievance and disciplinary matters*

**132**

That same limitation on bargaining rights is expressly reflected in the language of § 7403(f)(3) itself. In other words, § 7403(f)(3) preserves not *all* title 5 collective bargaining rights for hybrid employees, but only some—namely those relating to grievance procedures.

We similarly reject the FLRA's contention that our interpretation of title 38 leaves hybrid employees with fewer collective bargaining rights than nonhybrid employees. Contrary to the FLRA's assertion, hybrid employees continue to retain greater collective bargaining rights than nonhybrid employees with respect to peer review procedures such as are involved here. Under title 38, hybrid and nonhybrid employees alike are not permitted to bargain over peer review procedures relating to promotions. *Compare* 38 U.S.C. § 7403(f)(1)(B) (hybrid) *with id.* at § 7422(b) (nonhybrid). Nonhybrid employees may also not bargain over grievance procedures relating to peer review mechanisms; hybrid employees, on the other hand, are explicitly permitted to do so. *Compare id.* at § 7403(f)(3) (hybrid) *with id.* at § 7422(b) (nonhybrid).

### III. Conclusion

█ We conclude that the FLRA erroneously determined that promotion procedures for hybrid VHA employees are negotiable, and reject the FLRA's reasoning that any "matter[ ] that may be grieved" is negotiable under § 7403(f)(3). *See NAGE, Local R1–109,* at 9. Under § 7403(f)(1)(B) the Secretary has the power to "prescribe[ ]" regulations for the "promotion and advancement" of hybrid employees. 38 U.S.C. § 7403(f)(1)(B) (incorporating by reference Secretary's power under 38 U.S.C. § 7403(c)). Therefore, the Secretary need not negotiate about the criteria for promotions, including the procedures for determining promotions. However, any promotion in violation of the Secretary's specified promotion criteria—whether procedural or substantive—may be grievable under applicable grievance procedures.

In addition, "[n]otwithstanding any other provision of ... title [38] or other law," hybrid employees retain the right to resolve "all matters relating to ... grievance procedures ... under the provisions of title 5." *Id.* at § 7403(f)(3). In other words, hybrid employees may negotiate all matters relating to grievance procedures. We interpret the phrase "all matters relating to ... grievance procedures" to mean all matters relating to procedures for the settlement of grievances. *See* 38 U.S.C. § 7463, 5 U.S.C. § 7121. This interpretation emphatically does not include as negotiable all matters that may become the subject of grievance procedures. It includes as negotiable (i) the procedures for filing, processing, and resolving grievances, (ii) the scope of the grievance procedures, *i.e.,* selecting from among potential grievances those that may be resolved under the grievance procedures, and (iii) questions of arbitrability of grievances that are not satisfactorily resolved through the applicable grievance procedures.

Because the FLRA is charged with deciding issues of negotiability in the first instance we will not determine the negotiability of the Union's specific proposals under § 7403(f)(3). *See United States Information Agency v. FLRA,* 960 F.2d 165, 169 (D.C.Cir.1992) (FLRA has expertise to determine negotiability in the first instance). Accordingly, we remand the case to the FLRA for a proper determination of the proposals' negotiability in conformity with the statutory interpretations set out in this opinion.

*So ordered.*

---

*including, for those in recognized bargaining units, access to negotiated grievance procedures involving outside arbitration."* S. Rep. No. 215, 100th Cong., 1st Sess. 145 (1987) (emphasis added).