# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 20, 2011          Decided January 13, 2012

No. 10-1304

UNITED STATES DEPARTMENT OF THE NAVY,
NAVAL UNDERSEA WARFARE CENTER DIVISION
NEWPORT, RHODE ISLAND,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

---

On Petition for Review of an Order of
the Federal Labor Relations Authority

---

*Mark W. Pennak*, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were *Tony West*, Assistant Attorney General, and *William Kanter*, Attorney.

*Rosa M. Koppel*, Solicitor, Federal Labor Relations Authority, argued the cause and filed the brief for respondent.

Before: GINSBURG,[1] HENDERSON, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This case turns on whether a government agency may provide employees with free bottled water even when safe and drinkable water is available from water fountains at their work sites. Under federal appropriations law, the answer is no.

In the mid-1990s, the Naval Undersea Warfare Center Division in Newport, Rhode Island, began providing employees with bottled water. It did so after an EPA report indicated that water fountains in some Navy buildings in Newport contained components manufactured with lead. Beginning in 2005, however, the Navy replaced the problematic water fountains, tested the tap water, and determined it safe to drink. The Navy then stopped providing bottled water; it did not negotiate with employee unions before removing the bottled water. The Navy reasoned that an agency has no duty or authority to bargain over or grant benefits that are prohibited by federal appropriations law. And the Navy concluded that providing bottled water when safe and drinkable tap water was available would violate the legal prohibition against use of appropriated funds for employees' personal expenses.

The unions representing civilian employees at the Newport facilities objected to the removal of the bottled water and filed grievances with the Navy. When negotiations did not yield a compromise, the unions sought binding arbitration. An arbitrator sided with the unions and ordered the Navy to

---

[1] As of the date this opinion was published, Judge Ginsburg had assumed senior status.

continue providing bottled water on the ground that bottled water had become a condition of employment. The Federal Labor Relations Authority – an independent government agency responsible for adjudicating federal labor-management disputes – affirmed the arbitrator's decision, holding that the Navy had a duty to bargain with the unions before removing the bottled water. The Navy petitioned for review in this Court.

Decisions of the Supreme Court and this Court have strictly enforced the constitutional requirement, implemented by federal statutes, that uses of appropriated funds be authorized by Congress. *See* U.S. CONST. art. I, § 9, cl. 7; 31 U.S.C. § 1301 *et seq*. Funds appropriated for agency operations may be used for "necessary expenses" but not for employees' "personal expenses." As the Comptroller General has long determined, when safe and drinkable tap water is available in the workplace, bottled water constitutes a personal expense for which appropriated funds may not be expended. Under federal collective bargaining law, moreover, an agency has no duty or authority to bargain over or grant benefits that are "inconsistent with any Federal law." 5 U.S.C. § 7117(a)(1). Therefore, if safe and drinkable tap water was available at the Newport facilities, the Navy had no authority or duty to bargain before removing the bottled water.

We therefore vacate the decision of the Federal Labor Relations Authority and remand this case to the Authority to determine whether the tap water is in fact safe to drink. If the Authority concludes that the tap water is safe to drink, the Authority must rule for the Navy.

4

I

The Naval Undersea Warfare Center Division in Newport, Rhode Island, develops and supports submarine warfare systems for the U.S. Navy. Civilian employees at the Newport facilities are represented by two unions: (i) the National Association of Government Employees, Local R1-134, known as NAGE, and (ii) the Federal Union of Scientists and Engineers, Local R1-144, known as FUSE. NAGE negotiated a collective bargaining agreement with the Navy; FUSE had a grievance procedure agreement with the Navy, but no collective bargaining agreement.

The Navy began providing bottled water at the Newport facilities in the mid-1990s after it discovered that water fountains in some buildings were manufactured with components containing lead. Beginning in 2005, the Navy replaced those fountains with newer, lead-free models. The base command then re-tested the base's tap water sources. In 2006, after determining that the base's tap water was safe to drink, the Navy stopped providing bottled water. The base commander sent out a base-wide email assuring staff that the tap water was safe. The email informed base personnel that federal appropriations law precluded the Navy from providing bottled water given that safe and drinkable tap water was available.

The unions filed grievances under their negotiated dispute resolution procedures, arguing as relevant here that the Navy had a duty to bargain with them before removing the bottled water. When the grievances were not resolved through negotiation, the unions sought binding arbitration.

The arbitrator found that any change in the practice of providing bottled water "required conferring and negotiating between the parties bound by the Collective Bargaining

Agreement(s)." *In re Arbitration Between Dep't of the Navy, Naval Undersea Warfare Ctr., Div. Newport & FUSE/NAGE R1-144 & NAGE R1-134*, FMCS Case No. 070330-55282-3, at 8 (June 19, 2008). The arbitrator declined to consider the Navy's argument that federal appropriations law barred it from providing bottled water. The arbitrator said that looking to federal appropriations law "would be looking outside of the Collective Bargaining Agreement between the parties." *Id.* at 9.

The Navy filed exceptions to the arbitration award with the Federal Labor Relations Authority. *See* 5 U.S.C. § 7122(a). As relevant here, the Navy challenged the award on the grounds that (1) the arbitrator refused to consider its argument that federal appropriations law precluded it from providing bottled water, and (2) the arbitrator's findings drew no distinction between NAGE and FUSE, even though only NAGE had a collective bargaining agreement with the Navy. *See Agency's Exceptions to Arbitrator Jerome H. Wolfson's June 19, 2008 Award & Opinion* at 12, 15, 20, *Dep't of the Navy, Naval Undersea Warfare Ctr. Div. Newport, R.I.*, 64 F.L.R.A. 1136 (2010).

The Authority denied the exceptions and affirmed the arbitrator's conclusion that the Navy was obligated to bargain before removing the bottled water. *Dep't of the Navy, Naval Undersea Warfare Ctr. Div. Newport, R.I.*, 64 F.L.R.A. 1136, 1138-40 (2010). The Authority agreed with the arbitrator's determination that the Navy's "provision of bottled water for many years was an established past practice" at the Newport facilities and thus a "condition of employment," which the Navy could not change without bargaining with the unions. *Id.* at 1139. The Authority rejected the Navy's argument that federal appropriations law precluded the Navy from supplying bottled water, stating that "[n]one of the Comptroller General

decisions . . . permits unilateral termination of a practice to provide bottled water." *Id.* The Navy petitioned for review in this Court.

## II

Before reaching the merits of the Navy's arguments, we first consider whether we have jurisdiction to review the Authority's decision. To simplify the jurisdictional question: If the Authority's decision was based solely on the collective bargaining agreement between the Navy and NAGE, then we do not have jurisdiction. But if the Authority's decision was based on the Navy's statutory bargaining obligations, and not solely on the Navy's obligations under the collective bargaining agreement, then we do have jurisdiction. We conclude that the Authority's decision was based on the Navy's statutory bargaining obligations, not on the collective bargaining agreement. We therefore have jurisdiction.

## A

The Federal Service Labor-Management Relations Statute establishes a two-track system for resolving labor disputes between federal agencies and government employee unions. *See Overseas Educ. Ass'n v. FLRA* (*OEA*), 824 F.2d 61, 62 (D.C. Cir. 1987). The first track permits a union alleging an unfair labor practice, as defined in 5 U.S.C. § 7116, to file a charge with the General Counsel of the Federal Labor Relations Authority. The General Counsel must investigate the charge and may commence an administrative proceeding against the agency if the charge has merit. 5 U.S.C. § 7118(a)(1)-(2). The Authority's resolution of a charge is subject to judicial review in the courts of appeals. 5 U.S.C. § 7123(a).

The second track – the track chosen by the unions in this case – is binding arbitration. Every collective bargaining agreement between an agency and a union must include a negotiated grievance procedure, and every grievance procedure must allow a party dissatisfied with the outcome of the grievance negotiations to opt for binding arbitration. 5 U.S.C. § 7121(a)(1), (b)(1)(C)(iii). Once the arbitrator reaches a decision, either party may file exceptions to the arbitrator's award with the Federal Labor Relations Authority. 5 U.S.C. § 7122(a). The Authority reviews the arbitration award to ensure that it is not "contrary to any law, rule, or regulation," or otherwise deficient on any ground "similar to those applied by Federal courts in private sector labor-management relations." *Id.*

An aggrieved party may elect either track – the statutory complaint procedure or binding arbitration – but not both. 5 U.S.C. § 7116(d).

When the aggrieved party chooses the second track, the Authority's order resolving the exceptions to the arbitration award is ordinarily not judicially reviewable. 5 U.S.C. § 7123(a)(1). Insulating arbitration awards from judicial review reflects "a strong Congressional policy favoring arbitration of labor disputes" and furthers "Congress's interest in providing arbitration results substantial finality." *Ass'n of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697, 699 (D.C. Cir. 2007) (internal quotation marks omitted).

However, a narrow exception exists. Section 7123(a) provides:

(a) Any person aggrieved by any final order of the Authority *other than* an order under –
(1) section 7122 of this title (involving an award by an arbitrator), *unless the order involves an*

> > *unfair labor practice* under section 711[6][2] of this title, or
> >
> > (2) section 7112 of this title (involving an appropriate unit determination),
>
> may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.

Therefore, under Section 7123(a), an FLRA order reviewing an arbitration award is subject to judicial review if it "involves an unfair labor practice" under Section 7116.[3]

## B

The Authority argues that its decision in this case is not subject to judicial review – that is, that the decision did not "involve" a statutory unfair labor practice – because the Authority's opinion does not explicitly discuss a statutory "unfair labor practice." That argument contravenes this Court's precedents. We have not interpreted Section 7123(a)(1) to depend on whether the Authority explicitly discussed a specific statutory unfair labor practice. Instead, "the standard is that a statutory unfair labor practice must be either an explicit ground for, *or be necessarily implicated by*,

---

[2] The statutory text refers to "section 7118." That reference "has been recognized to be an error; the correct reference is to section 7116." *OEA*, 824 F.2d at 63 n.2.

[3] Refusing "to consult or negotiate in good faith with a labor organization" constitutes a statutory "unfair labor practice" under Section 7116(a)(5). The statutory unfair labor practice at issue here is the Navy's refusal to negotiate over a change to a condition of employment.

the Authority's decision." *OEA*, 824 F.2d at 67-68 (emphasis added) (footnote omitted). Where a successful claim *could not possibly* have been upheld based on the contract because the contract provided no ground for the Authority's decision, the Authority's decision necessarily implicates a statutory unfair labor practice. That is what happened here.

For several reasons, it is apparent that the Authority derived the Navy's duty to bargain over the removal of bottled water – that is, to bargain over a change to a condition of employment – from the statute, not from the collective bargaining agreement.

*First*, the Authority did not identify any provision of the collective bargaining agreement as creating a duty to bargain over the manner in which the Navy provided safe drinking water. Neither did the arbitrator. Our decision in *National Treasury Employees Union v. FLRA* (*NTEU*), the companion case to *Overseas Education Association*, provides a useful comparison. *See* 824 F.2d at 68. In *NTEU*, the union argued that the Customs Service had breached its "duty to bargain" by "failing to negotiate with respect to the changes in overtime practices." *Id.* The union grounded its claim on its collective bargaining agreement, which provided that "the Union has the right to bargain over the procedures which the Employer will observe in exercising its management rights authority." *Id.* Because the union "affirmatively chose to invoke the agreement, not the statute," the Court found that it did not have jurisdiction under Section 7123(a)(1), even though "the contractual provision at issue mirrors the Act." *Id.* at 69.

Here, by contrast, there is no contractual provision that "mirrors," or even approximates, the statutory duty "to consult or negotiate in good faith with a labor organization."

5 U.S.C. § 7116(a)(5). The only relevant provision of the NAGE Collective Bargaining Agreement is article 25, section 6. That section requires the Navy to provide "high quality drinking and wash water facilities" but says nothing about bargaining over the manner in which the Navy fulfills that obligation – that is, by water fountains or bottled water. J.A. 63.

*Second*, the Authority's discussion of the "duty to bargain" over changed conditions of employment relies on its own case law discussing statutory unfair labor practices, not contractual grievances. The Authority's order cites its prior decisions in *DOL I* and *DOL II*, *see* 64 F.L.R.A. at 1139, where it held that the Department of Labor committed a statutory unfair labor practice by failing to bargain over the removal of water coolers. *See Dep't of Labor* (*DOL I*), 37 F.L.R.A. 25, 36 (1990) ("[W]e conclude that DOL . . . *violated section 7116(1) and (5) of the Statute* when they decided to remove and/or stop paying for the water coolers without giving the Union notice and an opportunity to bargain over the decision to do so.") (emphasis added); *Dep't of Labor* (*DOL II*), 38 F.L.R.A. 899, 910 (1990) ("The Respondent Violated Section 7116(a)(1) and (5) of the Statute"). The Authority's reliance on its statutory unfair labor practice case law further demonstrates that it derived the Navy's duty to bargain over the bottled water from the statute, not from any contractual provision.

*Third*, of the two unions that brought the initial grievances, only one – NAGE – even had a collective bargaining agreement with the Navy. The other – FUSE – had negotiated a grievance procedure agreement (which it invoked in this case) but no collective bargaining agreement. With respect to FUSE, the Authority's contention that the claim "was litigated solely as a contractual violation" is thus

illogical. FLRA Br. at 20. There simply was no contract on which the "duty to bargain" with FUSE could have been predicated.

The Authority's decision necessarily involved a statutory unfair labor practice. Therefore, this Court has jurisdiction under Section 7123(a)(1).

III

We therefore proceed to the substantive question raised by the Navy's petition: whether the Authority's order compelling the Navy to provide bottled water at its Newport facilities is consistent with federal appropriations law.

A

The Appropriations Clause of the Constitution provides: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ." U.S. CONST. art. I, § 9, cl. 7. The Clause's words convey a "straightforward and explicit command": No money "can be paid out of the Treasury unless it has been appropriated by an act of Congress." *Office of Personnel Mgmt. v. Richmond* (*OPM*), 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)) (internal quotation marks omitted). The Clause protects Congress's "exclusive power over the federal purse." *Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 185 (D.C. Cir. 1992). The power over the purse was one of the most important authorities allocated to Congress in the Constitution's "necessary partition of power among the several departments." THE FEDERALIST NO. 51, at 320 (James Madison) (Clinton Rossiter ed., 1961); *see also id.* NO. 58, at 359 (James Madison) ("This power over the purse may, in fact, be regarded as the most complete and effectual weapon

with which any constitution can arm the immediate representatives of the people, for obtaining a redress of every grievance, and for carrying into effect every just and salutary measure.").

The Appropriations Clause is thus a bulwark of the Constitution's separation of powers among the three branches of the National Government. It is particularly important as a restraint on Executive Branch officers: If not for the Appropriations Clause, "the executive would possess an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure." 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1342, at 213-14 (1833); *see also Cincinnati Soap Co.*, 301 U.S. at 321 (the Clause "was intended as a restriction upon the disbursing authority of the Executive department"); *Reeside v. Walker*, 52 U.S. 272, 291 (1851) ("However much money may be in the Treasury at any one time, not a dollar of it can be used in the payment of any thing not thus previously sanctioned. Any other course would give to the fiscal officers a most dangerous discretion."). The Appropriations Clause prevents Executive Branch officers from even inadvertently obligating the Government to pay money without statutory authority. *See OPM*, 496 U.S. at 416; *see also Dep't of the Air Force v. FLRA*, 648 F.3d 841, 845 (D.C. Cir. 2011).

Federal statutes reinforce Congress's control over appropriated funds. *See* 31 U.S.C. § 1301 *et seq.*; *see also Harrington v. Bush*, 553 F.2d 190, 194-95 (D.C. Cir. 1977) ("This clause is not self-defining and Congress has plenary power to give meaning to the provision. The Congressionally chosen method of implementing the requirements of Article I, section 9, clause 7 is to be found in various statutory provisions.") (footnote omitted).

Section 1301, known as the "Purpose Statute," provides that appropriated funds may be applied only "to the objects for which the appropriations were made." 31 U.S.C. § 1301(a). Section 1341, known as the Anti-Deficiency Act, makes it unlawful for government officials to "make or authorize an expenditure or obligation exceeding an amount available in an appropriation" or to involve the Federal Government "in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. § 1341(a)(1)(A)-(B). A government official who knowingly and willfully violates Section 1341(a) is subject to criminal penalties, including imprisonment. 31 U.S.C. § 1350.

Federal collective bargaining is not exempt from the rule that funds from the Treasury may not be expended except pursuant to congressional appropriations. Indeed, the statute governing federal labor relations explicitly relieves agencies of the duty to bargain over any matter that would be "inconsistent with any Federal law or any Government-wide rule or regulation." 5 U.S.C. § 7117(a)(1). Therefore, under Section 7117, "a collective bargaining proposal is contrary to law, and hence not subject to bargaining, if it requires expenditure of appropriated funds for a purpose not authorized by law." *Air Force*, 648 F.3d at 848 (quoting *Ass'n of Civilian Technicians, P.R. Army Chapter v. FLRA* (*ACT III*), 534 F.3d 772, 776 (D.C. Cir. 2008)); *see also Ass'n of Civilian Technicians, P.R. Army Chapter v. FLRA* (*ACT II*), 370 F.3d 1214, 1217 (D.C. Cir. 2004).

Congress's control over federal expenditures is "absolute." *Rochester*, 960 F.2d at 185 (internal quotation marks omitted). The Clause does not permit an agency, by contract with a union, "to authorize the expenditure of funds beyond what Congress has approved." *Air Force*, 648 F.3d at

845; *see also Ass'n of Civilian Technicians, P.R. Army Chapter v. FLRA* (*ACT I*), 269 F.3d 1112, 1116 (D.C. Cir. 2001) ("This is not to say that the expenditure of appropriated funds in a manner not authorized by law is negotiable – it is not."); 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW 4-9 (3d ed. 2004) ("an agency cannot use the device of a contract, grant, or agreement to accomplish a purpose it could not do by direct expenditure").

The question, then, is whether providing bottled water under these circumstances would violate federal appropriations law. If it would, then the Navy cannot continue providing bottled water at the Newport facilities and cannot bargain over that issue with the unions.

B

We have established so far that an agency's obligations under federal collective bargaining law are circumscribed by the limitations imposed by federal appropriations law. Therefore, whether the Navy had a duty to bargain depends on whether federal appropriations law permits the purchase of bottled water where safe and drinkable tap water is available.

The Authority ruled that using appropriated funds to purchase bottled water at the Newport facilities would not contravene federal appropriations law. *Dep't of the Navy, Naval Undersea Warfare Ctr. Div. Newport, R.I.*, 64 F.L.R.A. 1136, 1139-40 (2010). The FLRA is entitled to "considerable deference" when interpreting and applying the Federal Service Labor-Management Relations Statute, its "own enabling statute." *ACT III*, 534 F.3d at 776 (quoting *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97 (1983); *ACT II*, 370 F.3d at 1219). It receives no deference, however, when it "has endeavored to reconcile its organic statute with another statute" – such as a federal appropriations

statute – "not within its area of expertise." *Air Force*, 648 F.3d at 846 (quoting *Dep't of Veterans Affairs v. FLRA*, 9 F.3d 123, 126 (D.C. Cir. 1993)) (internal quotation marks, brackets, and ellipses omitted); *see also Ass'n of Civilian Technicians, Tony Kempenich Mem'l Chapter 21 v. FLRA*, 269 F.3d 1119, 1121 (D.C. Cir. 2001); *SSA v. FLRA*, 201 F.3d 465, 471 (D.C. Cir. 2000).

A core tenet of appropriations law is enshrined in 31 U.S.C. § 1301(a), the "Purpose Statute," which commands: "Appropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." Under Section 1301(a), in order for appropriated funds to be legally available for an expenditure, "the purpose of the obligation or expenditure must be authorized." 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 4-6.

To begin with, the relevant appropriations statute does not specifically prohibit the purchase of bottled water. But by the same token, no statutory language explicitly *authorizes* the purchase of bottled water here. And all uses of appropriated funds must be affirmatively approved by Congress; the mere absence of a prohibition is not sufficient.

The question then is whether, and under what circumstances, a general appropriation for an agency's operations implicitly authorizes the purchase of bottled water.

The Comptroller General has developed the "necessary expense" doctrine as a rule of construction for appropriations statutes.[4] That doctrine governs the many situations where, as

---

[4] The Comptroller General is a legislative official who heads the Government Accountability Office. *See* 31 U.S.C. § 702(b). The Comptroller General is appointed to a 15-year term by the President with the advice and consent of the Senate. *See* 31 U.S.C.

here, general statutory text leaves open whether a specific proposed expenditure is a legally authorized purpose for which appropriated funds may be expended. *See ACT II*, 370 F.3d at 1221-22. This Court regards "the assessment of the GAO and thus, the Comptroller General as an expert opinion, which we should prudently consider but to which we have no obligation to defer." *ACT I*, 269 F.3d at 1116 (quoting *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 201 & n.1 (D.C. Cir. 1984) (Scalia, J.)) (internal quotation marks and brackets omitted); *see also Delta Data Systems*, 744 F.2d at 201 n.1 ("Since the GAO has been thought to be an arm of the legislature, there might be a constitutional impediment to such binding effect.") (internal quotation marks and citation omitted). Here, moreover, the Navy – an executive agency represented by the Department of Justice – agrees with the Comptroller General's analysis. That said, although we consider the Comptroller General's reasoning to the extent it is persuasive, "it is the court that has the last word." *Id.* at 202 (internal quotation marks and brackets omitted).

Under the necessary expense doctrine, "[a]n appropriation made for a specific object is available for expenses necessarily incident to accomplishing that object unless prohibited by law or otherwise provided for." 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 4-20; *see also ACT II*, 370 F.3d at 1218; *Public Building Improvements*, 42 Comp. Gen. 226, 228 (1962). Whether an expenditure is reasonably necessary to accomplish the agency's mission, "in

---

§ 703(a)(1), (b). The President selects a nominee from a list of candidates prepared by a commission of congressional leaders. *See* 31 U.S.C. § 703(a). Once appointed, the Comptroller General is removable only by Congress and only for cause. *See* 31 U.S.C. § 703(e)(1); *see also Bowsher v. Synar*, 478 U.S. 714, 730 (1986) ("In constitutional terms, the removal powers over the Comptroller General's office dictate that he will be subservient to Congress.").

the first instance, is a matter of agency discretion," but the expenditure's "relationship to an authorized purpose or function" may be "so attenuated as to take it beyond that range" of permissible discretion. *Implementation of Army Safety Program*, B-223608 (Comp. Gen. Dec. 19, 1988).

The Comptroller General "has never established a precise formula for determining the application of the necessary expense rule"; rather, it applies and develops the doctrine through its "body of case law responsive to the changing needs of government." 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 4-21. That case law distinguishes necessary expenses, on which appropriated funds may be expended, from "personal expenses," on which they may not be expended. *See Scope of Professional Credentials Statute*, B-302548, at 3 (Comp. Gen. Aug. 20, 2004) ("Generally, personal expenses are not payable from appropriated funds absent specific statutory authority."). Personal expenses are items that government employees are expected to obtain at their own expense, like food while at their regular workplaces (that is, not on government travel). *See* GAO, 1 PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 4-103 ("food is a personal expense and government salaries are presumed adequate to enable employees to eat regularly").

The Comptroller General's case law has analyzed when agencies may purchase bottled water under the necessary expense doctrine. As a threshold matter, "it has long been conceded that drinking water is a necessity" at the workplace. *Id.* at 4-119 n.70. "However, an agency may not use appropriated funds for *bottled* drinking water for the use of employees where the public water supply of the locality is safe for drinking purposes." *Id.* (emphasis added). That is because, "[a]s a general proposition, bottled water is a personal expense for which appropriations are not available."

*Dep't of the Army, Military Surface Deployment & Distribution Command – Use of Appropriations for Bottled Water*, B-318588, at 1 (Comp. Gen. Sept. 29, 2009).

Bottled water is considered "necessary" – and thus may be purchased with appropriated funds – when "the available water posed a health risk if consumed, or because water was not available." *Id.* at 2-3. The line of Comptroller General decisions articulating this rule dates back at least to 1923. *See Purchase of Drinking Water*, 2 Comp. Gen. 776, 776 (1923) ("The purchase of drinking water is, ordinarily, a personal matter, and the expense may only be allowed upon the ground of necessity. It has been recognized as a duty upon the Government to supply drinking water where none is available in the offices or other public quarters or where that furnished is unwholesome or not potable."); *see also, e.g.*, *Dep't of the Army – Use of Appropriations for Bottled Water*, B-310502, at 3 (Comp. Gen. Feb. 4, 2008); *Clarence Maddox – Relief of Liability for Improper Payments for Bottled Water*, B-303920, at 2-3 (Comp. Gen. Mar. 21, 2006); *U.S. Agency for Int'l Development – Purchase of Bottled Drinking Water*, B-247871 (Comp. Gen. Apr. 10, 1992).

Under the Comptroller General's longstanding reading of the statute, an agency would violate 31 U.S.C. § 1301 if it provided bottled water when safe and drinkable tap water is available. The Navy – represented by the Department of Justice – concurs in that reasoning and conclusion.

We agree with that interpretation of the statute. Permitting bottled water purchases only upon a showing of such necessity recognizes that "an agency, as an employer, is expected to meet certain basic needs of its employees, particularly when it comes to protecting an employee's health and safety in the workplace." *Dep't of the Army – Use of*

*Appropriations for Bottled Water*, B-310502, at 4. That rule balances that appropriate solicitude for employee health with the principle that food, including "snacks and refreshments," "is a personal expense which a Government employee is expected to bear from his or her salary." 1 GAO, PRINCIPLES OF FEDERAL APPROPRIATIONS LAW at 4-103 & n.58 (internal quotation marks omitted); *see also id.* at 4-103 ("In addition to the obvious reason that food is a personal expense and government salaries are presumed adequate to enable employees to eat regularly, furnishing free food might violate 5 U.S.C. § 5536, which prohibits an employee from receiving compensation in addition to the pay and allowances fixed by law.") (footnote omitted). Providing bottled water when safe and drinkable tap water is available would serve no purpose other than accommodating employees' personal tastes – a purpose that generally cannot justify the expenditure of appropriated funds.

The general rule prohibiting such expenditures serves to "ensure public confidence in the integrity of those who spend the taxpayers['] money." *Id.* at 4-108. In light of this overriding goal, the prohibition on bottled water when safe and drinkable tap water is available strikes us as the correct application of the Purpose Statute. Therefore, if the tap water at the Newport facilities is safe and drinkable, the purchase of bottled water with appropriated funds would violate federal appropriations law – and the Navy would have no authority or duty to bargain with the unions before discontinuing the provision of free bottled water. *See U.S. Agency for Int'l Development*, B-247871 ("We conclude that the OIG may use appropriated funds to purchase bottled drinking water for its employees *until the problems with the building's water supply are adequately corrected and the water is shown to be safe*.") (emphasis added).

## C

The remaining question is whether the tap water at the Newport facilities is in fact safe to drink. The Navy argues that the decisions in the related Cain arbitrations conclusively establish that the tap water is safe to drink. Those arbitrations were not in the record before the Authority. The Navy did, however, raise at every stage of the proceedings the argument that the tap water was safe to drink and that the Navy therefore had no discretion to provide bottled water. Under the circumstances, we think the prudent course is to remand to the Authority for it to assess the Cain arbitrations and the more fundamental question whether the tap water is in fact safe to drink. If the water at the Newport facilities *is* safe to drink, then the Authority must rule for the Navy.

\* \* \*

We grant the petition for review, vacate the FLRA's order, and remand this case for the Authority to determine whether the tap water is in fact safe to drink. If the tap water is in fact safe to drink, the FLRA must rule for the Navy.

*So ordered.*