Chambers v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Submitted: April 25, 2007    Decided: July 13, 2007
              Amended: July 17, 2007)
Docket No. 06-0804-ag

--------------------------------------

Michelle A. Chambers,

Petitioner,

- v -

Office of Chief Counsel, Department of Homeland Security, Alberto
R. Gonzales, United States Attorney General,

Respondents.

--------------------------------------

Before: McLAUGHLIN, SACK, Circuit Judges, and POGUE, Judge.[*]
    Judge Pogue dissents in a separate opinion.

Petition for review of a decision by the Board of
Immigration Appeals ordering removal on the grounds that the
petitioner knowingly assisted the attempted entry of an illegal
alien.

Petition denied.

          Victor Schurr, Pelham, NY, for
          Petitioner.[**]

---

[*] The Honorable Donald C. Pogue, of the United States Court
of International Trade, sitting by designation.

[**]The Court was informed on the eve of the scheduled oral
argument that Mr. Schurr was, for ample reason, unable to attend.
At the time of the scheduled argument, the respondents presented
no substantive argument.  We then took this case under submission

Ari Nazarov, Trial Attorney, Office of Immigration Litigation, United States Department of Justice (Peter D. Keisler, Assistant Attorney General, and Alison M. Igoe, Senior Litigation Counsel, on the brief), Washington, DC, for Respondents.

SACK, Circuit Judge:

Michelle Chambers, a Jamaican native, petitions for review of a decision by the Bureau of Immigration Appeals ("BIA") ordering her removal pursuant to 8 U.S.C. § 1182(a)(6)(E)(i). In re Michelle A. Chambers, No. A 56 034 092 (B.I.A. Jan. 24, 2006), aff'g No. A 56 034 092 (Immig. Ct. Buffalo Aug. 26, 2004). She contends that the BIA erred in finding that she knowingly assisted her former boyfriend's attempted illegal entry into the United States and that irrespective of whether she knew he could not legally enter the United States, her actions were insufficient to constitute an affirmative act of assistance within the meaning of the statute. We disagree and therefore deny the petition.

**BACKGROUND**

Chambers was, at all relevant times, a lawful permanent resident of the United States residing in Hempstead, Long Island, New York. In February 2003, she traveled by automobile with her brother, a United States citizen, to Ontario, Canada, to visit

on the express understanding that if any one of the three members of the panel was of the view that oral argument would likely be helpful, the panel would reconvene to hear it. Upon further consideration, no member of the panel has asked for such oral argument.

2

relatives. In 1990, her former boyfriend, Christopher Woolcock, a resident of Jamaica, had been deported by the United States after being convicted of a drug-related felony. He was also in Ontario at the time of Chambers's visit, allegedly to attend his uncle's wedding. Prior to Chambers's and Woolcock's trips to Ontario, they agreed during the course of a telephone conversation to meet there and return together to the United States.

On February 23, 2003, with Chambers's brother driving, she, her brother, and Woolcock traveled from Ontario headed for the United States in an automobile with Georgia license plates. Chambers was in the front passenger seat and Woolcock was in the back seat. At the border crossing, Chambers's brother handed United States customs officials his passport, his sister's travel documents, and a green card issued in Woolcock's name. Because the customs database revealed that Woolcock had previously been deported, the three were referred to immigration offices for further examination.

During subsequent questioning by an immigration inspector, Chambers repeatedly said that Woolcock lived in Long Island and that he had traveled to Canada with her and her brother. She also denied having Woolcock's passport. Moments later, however, she retrieved it from underneath a seat cushion in the area where she had been waiting to be interviewed. Following her interview, Chambers gave a sworn statement to the inspector in which she admitted (1) lying about Woolcock's

3

residence; (2) having previously agreed with Woolcock to accompany him at the Canadian border as he tried to enter the United States; (3) that prior to that conversation, "[h]e was going to come some other way through Kennedy airport"; (4) that she thought Woolcock had last been in the United States seven years before; (5) that she was aware he had been deported previously; and (6) that Woolcock was planning to stay with her at her home upon entering the United States.

Chambers was charged with knowingly aiding or assisting the illegal entry of another alien under 8 U.S.C. § 1182(a)(6)(E)(i), and given a notice to appear at removal proceedings. That removal hearing was held before Immigration Judge ("IJ") Philip J. Montante, Jr. Chambers testified that she thought Woolcock was permitted to enter the United States because he had shown her a green card (with his "much younger" picture on it) and had told her that an immigration officer at the time of his deportation in 1990 had informed him that he could return to the United States after ten years.[1] She again admitted having lied to immigration officers both when she told them that Woolcock was a Long Island resident and when she said that she did not know the whereabouts of Woolcock's passport. And she admitted that she had also lied when she told the immigration inspector during her interview that Woolcock was going to live

---

[1] Woolcock, as an alien deported for commission of an aggravated felon, is permanently ineligible to gain entry. See 8 U.S.C. § 1182(a)(9)(A)(i).

4

with her when they returned to Long Island. In fact, Chambers testified, he was to live with his mother.

Chambers explained her misstatements by saying she was frightened because she had been told she would be deported. Asked on cross-examination why she had never decided to visit her family in Canada until the weekend that Woolcock was also in Canada, Chambers answered, "Well, we just decided."[2]

At the conclusion of the hearing, the IJ issued an oral decision concluding that Chambers had knowingly aided the illegal entry of another alien. The IJ noted Chambers's several misstatements at the Canadian border and found that "she lied to the Court today." In re Michelle A Chambers, A 56 034 092, at 9. Relying on these misstatements and Chambers's sworn statement that she and Woolcock had planned the trip across the border, the IJ concluded that Chambers knew that Woolcock could not legally enter the United States and that her actions "were an attempt to induce and to encourage" Woolcock's illegal entry. Id. at 9-13. The IJ also noted that he perceived Chambers's testimony that Woolcock told her that he could reenter the United States ten years after his deportation to be inconsistent with Chambers's statement to the immigration inspector that Woolcock was last in the United States seven years prior to the 2003 incident at the border. Id. at 11 ("Well, if he had been in the United States seven years ago, doesn't that fly in the face of her statement

---

[2] There is no indication that Chambers received compensation for assisting Woolcock's attempted entry into the United States.

that [Woolcock] told her allegedly that he could return after 10 years and here it was seven years ago that he was in the United States.").

On January 24, 2006, the BIA affirmed in a short opinion that closely followed the IJ's reasoning. First, the BIA determined that "if [Chambers] believed that Mr. Woolcock could only reenter the United States after having been absent for 10 years after his deportation, [Chambers] would have had knowledge that Mr. Woolcock would not have been able to reenter the United States after the passage of only 7 years." In re Michelle A. Chambers, A 56 034 092, at 2. Second, it concluded that in light of Chambers's numerous admitted and deliberate misrepresentations to customs officials at the border, the IJ did not err in finding Chambers's testimony at the hearing incredible or in "finding that her deception at the border reflected guilty knowledge." Id.

Chambers petitions for review.

**DISCUSSION**

I. Standard of Review

"Since the BIA affirmed the IJ's order in a 'brief opinion [that] closely tracks the IJ's reasoning,' and since our conclusion is the same regardless of which decision we review, 'we will consider both the IJ's and the BIA's opinions.'" Lewis v. Gonzales, 481 F.3d 125, 129 (2d Cir. 2007) (quoting Wangchuck v. Dep't of Homeland Security, 448 F.3d 524, 528 (2d Cir. 2006)) (brackets in original).

6

We review the IJ's and BIA's factual findings for substantial evidence, and we consider questions of law and applications of law to fact de novo. Secaida-Rosales v. INS, 331 F.3d 297, 306-07 (2d Cir. 2003). The BIA's findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The petitioner's knowledge at the time in question is a question of fact. See, e.g., Farmer v. Brennan, 511 U.S. 825, 842 (1994); Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996); see also Locurto v. Guliani, 447 F.3d 159, 177 n.6 (2d Cir. 2006) ("[T]he defendants' intent is a factual question . . . .").

II. Chambers Acted Knowingly

Section 212(a)(6)(E)(i) of the Immigration and Naturalization Act provides that an alien is not admissible into the United States if he or she "at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of the law." 8 U.S.C. § 1182(a)(6)(E)(i).[3] Chambers argues that the

---

[3] Aliens such as Chambers who have achieved lawful permanent resident status in the United States are regarded as seeking admission to the United States if they have "engaged in illegal activity after having departed the United States." 8 U.S.C. § 1101(a)(13)(C)(iii) ("An alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien . . . (iii) has engaged in

7

circumstances surrounding her stop at the border compel the conclusion that she did not act "knowingly." Specifically, she contends that her behavior was consistent with the acts of someone who thought she was participating in a legal act: her brother readily handed over Woolcock's green card to the customs officer; no subterfuge in the form of fraudulent documents or hidden compartments was used; and Chambers complied with all of the various officers' requests. She argues further that her misstatements were not only immaterial to the charge of aiding illegal alien entry, but also were later recanted.

But Chambers does not contest that she lied at the border regarding Woolcock's residency and the whereabouts of his passport. The nature of these misstatements plainly supports the inference drawn by the IJ and the BIA that Chambers knew Woolcock could not legally enter the United States. For example, her statements that Woolcock lived in Long Island and drove with her and her brother to Canada could reasonably be construed as an attempt by Chambers to convince officials that Woolcock then resided in the United States lawfully. Such an inference would in turn support the corollary inference that Chambers wanted border officials to think Woolcock was a legal resident of the United States because she knew he would otherwise not be

illegal activity after having departed the United States.").

8

permitted to enter in light of his immigration status. These inferences, taken together with Chambers's admissions that she and Woolcock planned the means and method of his return to the United States and that she knew that he had been deported previously, constitute substantial evidence to support the IJ's and BIA's findings that Chambers acted knowingly to assist Woolcock's attempted illegal entry. See Siewe v. Gonzales, 480 F.3d 160, 168 (2d Cir. 2007) ("So long as there is a basis in the evidence for a challenged inference, we do not question whether a different inference was available or more likely."); see also id. ("[W]e will reject a deduction made by an IJ only when there is a complete absence of probative facts to support it . . . .").

To be sure, the IJ and BIA appear to have ascribed misplaced significance to the fact that Chambers professed to believe both that Woolcock had been in the United States within the past seven years and that an immigration officer had told Woolcock he could reenter after ten years. These two assertions are not inherently contradictory. Assuming that Chambers had believed Woolcock's assertion that he could reenter the United States ten years after his deportation in 1990, nothing about the statement would compel Chambers to think that the ten-year clock restarted each time Woolcock entered the United States, as the IJ and BIA seemed to believe. Nevertheless, neither the IJ nor the

9

BIA relied solely -- or, in the case of the IJ, substantially -- on this reasoning in finding that Chambers knowingly assisted Woolcock's attempted illegal entry. Instead, each expressly and additionally relied on Chambers's repeated misstatements and the reasonable inferences drawn therefrom. We therefore conclude that the record contains substantial evidence in support of the agency's finding that Chambers acted with the requisite knowledge and that, were we to remand, the agency would reach the same result even absent the likely error that we have identified. See Cao He Lin v. U.S. Dep't of Justice, 428 F.3d 391, 401 (2d Cir. 2005) ("Certainly if the IJ explicitly adopts an alternative and sufficient basis for her determination, no remand is required."); see also Siewe, 480 F.3d at 166-67; Li Zu Guan v. INS, 453 F.3d 129, 137-38 (2d Cir. 2006).

III. Chambers's Actions Are Sufficient to Constitute Assistance Under Section 212(a)(6)(E)(i)

As an alternative basis for granting her petition, Chambers argues that her actions do not as a matter of law rise to the requisite affirmative assistance that § 212(a)(6)(E)(i) requires. In support, she cites cases in which divided panels of the Sixth and Ninth Circuits have held that the anti-smuggling statute requires an affirmative act of assistance or encouragement beyond either "openly presenting an alien to border

10

officials with accurate identification and citizenship papers," Tapucu v. Gonzales, 399 F.3d 736, 737 (6th Cir. 2005), or "mere presence in [a] vehicle with knowledge of [a] plan" to smuggle an alien into the United States, Altamirano v. Gonzales, 427 F.3d 586, 596 (9th Cir. 2005).

Our Circuit has yet to set forth anything approaching a bright-line test as to the nature of the actions that will or will not suffice to support a finding that an alien has "encouraged, induced, assisted, abetted, or aided" another in illegally entering the United States. 8 U.S.C. § 1182(a)(6)(E)(i). We need not do so here. Chambers did not present agents at the border with accurate information, as did the petitioner in Tapucu, and she was not "mere[ly] presen[t] in the vehicle" in which her brother drove Woolcock across the border like the petitioner in Altamirano. She does not qualify as an innocent bystander on any reading of the facts. The fact that no fraudulent documents were used and no payments by Woolcock were made does not overcome the ample evidence to support the IJ's and BIA's findings that Chambers personally arranged to provide transportation for Woolcock into the United States and purposefully deceived customs officials at the time of his attempted entry. Chambers traveled to Canada with the pre-planned intent to bring Woolcock across the border in her car

11

upon her return, and she actively sought to mislead customs officials about Woolcock's residency status in a way that, if believed, would have made it easier for him to enter the United States. There is thus sufficient evidence from which the IJ and the BIA could conclude that she assisted, abetted, or aided Woolcock in his attempt illegally to enter the United States. Section 212(a)(6)(E)(i) requires no more.

**CONCLUSION**

For the foregoing reasons, Chambers's petition for review is denied.

12

Pogue, Judge dissenting:

The majority opinion correctly states that the BIA's conclusion that Ms. Chambers violated the alien-smuggling statute is based on the agency's finding that Ms. Chambers had knowledge of Woolcock's illegal scheme. The majority opinion also acknowledges – and I agree - that the BIA improperly concluded that Ms. Chambers must have known that Woolcock's reentry was illegal based on her stated belief that he had been in the country within the last seven years.  As the majority notes, if Ms. Chambers believed that Woolcock could reenter the country any time after ten years had passed since his 1990 deportation, whether Woolcock had previously violated the imagined ten-year period says nothing about what Ms. Chambers necessarily believed or knew regarding the propriety of his entry in 2003.

I depart from the majority's opinion, however, because the BIA's decision also makes it clear that the agency's erroneous finding - that Ms. Chambers had knowledge of Woolcock's possible prior reentry - was the major ground for its decision. While the BIA also "found no clear error" in the IJ's finding that Ms. Chambers' "deception at the border reflected guilty knowledge,"  the BIA did not state that Ms. Chambers' misrepresentations provided an alternative basis for its decision. Based on this record, therefore, I believe we should review the decision on its stated grounds. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is

authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); see also Lin v. U.S. Dep't of Justice, 453 F.3d 99, 106 (2d Cir. 2006).

Moreover, Ms. Chambers corrected or recanted each of her misrepresentations during the customs investigation, and ultimately provided correct information at the border during the investigation. Accordingly, it seems to me that this case is more like the case cited by the majority, Li Zu Guan v. INS, 453 F. 3d 129 (2d Cir. 2006), where the court remanded because it could not be "certain that the errors below did not play a role in the decision to deny relief." Id. at 141. As in Li Zu, the agency's error here played at least "a role in the decision to deny relief." Id. Furthermore, as the court in Tapucu explained, there is nothing "illegal about driving a known illegal alien with admittedly authentic papers to the American border for examination by the border guards." Tapucu v. Gonzales, 399 F.3d 736, 739-40 (6th Cir. 2005); see also Doe v. Gonzales, 484 F.3d 445, 449-50 (7th Cir. 2007) (noting that presence at the scene of persecution may not constitute "assistance" in the absence of support or encouragement, and further noting that aiding in a cover-up without advance participation in planning such a cover-up also does not constitute assistance in the actual scheme). As a result, I cannot say with confidence that the BIA would have reached the same result in the absence of error, and it seems to me that the BIA should be given the opportunity to weigh the exculpatory

14

evidence and make an initial error-free determination as to whether relief is appropriate.

Finally, in order to support a conclusion that Ms. Chambers actually assisted in an illegal entry in violation of Section 212(a)(6)(E)(i), the majority relies on a hypothetical finding – that "Chambers traveled to Canada with the pre-planned intent to bring Woolcock across the border in her car upon her return, and she actively sought to mislead customs officials about Woolcock's residency status in a way that, if believed, would have made it easier for him to enter the United States." To find a violation of the statute, however, requires more than a hypothetical finding that the petitioner's actions "would have made it easier;" it requires that the actions actually assisted, abetted or aided. Perhaps more importantly, the agency made no such finding. Rather, the BIA made the more nuanced and limited conclusion, upon which it did not rely to find a violation of the statute, that Ms. Chambers "arranged to meet with Mr. Woolcock, an alien previously deported from the United States as an aggravated felon, at her family's home in Canada so that he could travel to the United States with her and her brother by car." In re Michelle A. Chambers, A 56 034 092, at 1-2. Similarly, with regard to the majority's claim of deception, the agency found only that "... despite the respondent's alleged belief that the [sic] Mr. Woolcock could legally enter the United States, the record reflects that the respondent made several misrepresentations to the immigration officials in secondary

15

inspection . . . . Specifically . . . [Chambers] told [the Agent] that all three of the passengers in the car had traveled to Canada together and that they all lived together in Long Island, New York." Id. at 2. As noted above, Ms. Chambers later corrected or recanted these statements and ultimately provided correct information at the border during the investigation. It does not seem to me that it is our role to expand the agency's findings in order to support its conclusion.