13-481
*Singh v. Holder*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 12ᵗʰ day of March, two thousand fourteen.

Present:     ROBERT A. KATZMANN,
                     *Chief Judge*,
             ROBERT D. SACK,
                     *Circuit Judge*,
             JED S. RAKOFF,
                     *District Judge.*[*]

---

LAKHWINDER SINGH,

        *Petitioner*,

        – v. –
                                                    No. 13-481

ERIC H. HOLDER, JR., United States
Attorney General,

        *Respondent.*

---

For Petitioner:             ANNE E. DOEBLER, Buffalo, N.Y.

For Respondent:             ANDREW C. MACLACHLAN, Office of Immigration
                            Litigation (Jesi J. Carlson, Office of Immigration

---

[*] The Honorable Jed S. Rakoff, United States District Judge of the District Court for the Southern District of New York, sitting by designation.

1

Litigation, and Stuart F. Delery, Assistant Attorney General, *on the brief*), Washington, D.C.

**UPON DUE CONSIDERATION** of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), **IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the petition for review is **GRANTED**.

Petitioner Lakhwinder Singh challenges a January 14, 2013 order of the BIA ordering him removed from the United States based on the finding of the immigration judge ("IJ") that Singh knowingly encouraged, induced, assisted, abetted, or aided another noncitizen in entering the country unlawfully. This finding made Singh, a lawful permanent resident, removable under 8 U.S.C. § 1182(a)(6)(E)(i). The sole dispute in this case is whether Singh knew that his passenger, Sukhpreet Singh Bedi (no relation), was inadmissible.[1]

This case has been before this Court before. In the previous appeal, we vacated Singh's order of removal, rejected the IJ's adverse credibility finding, and ordered that a key piece of evidence on which the prior finding of removability was based be suppressed. *See Singh v. Mukasey*, 553 F.3d 207, 216-17 (2d Cir. 2009) ("*Singh I*"). On remand, the government submitted no additional evidence of removability and asked the IJ to find Singh removable based on the remaining (non-suppressed) evidence. In response, Singh argued that our order required that Singh's removal proceedings be terminated and, in the alternative, that the remaining evidence was insufficient to support a finding of removability. The IJ found that our prior order did not require that proceedings be terminated and, after evaluating the untainted evidence in the record, again found Singh removable under 8 U.S.C. § 1182(a)(6)(E)(i). Specifically, the IJ

---

[1] Although Bedi was a Canadian citizen and ordinarily permitted to enter the United States with his Canadian passport, *see* 22 C.F.R. § 41.2(a), the Department of Homeland Security ("DHS") alleges that Bedi intended to work without authorization and was therefore inadmissible.

found that the evidence supported an inference that Singh had actual knowledge of Bedi's inadmissibility or was, at best, willfully ignorant about it. The BIA upheld the IJ's conclusion that our remand order did not require termination and its finding that Singh was "fully aware of Mr. Bedi's unlawful status." Certified Administrative Record at 5.

This Court reviews the agency's factual findings, including a finding regarding a "petitioner's knowledge at the time in question," under the substantial evidence standard. *Chambers v. Office of Chief Counsel*, 494 F.3d 274, 277-78 (2d Cir. 2007). Under the substantial evidence standard, which is "slightly stricter" than the clear-error standard generally applied to a district court's factual findings, *Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 337 (2d Cir. 2006) (internal quotation marks omitted), we defer to the agency's findings so long as there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alvarado-Carillo v. INS*, 251 F.3d 44, 49 (2d Cir. 2001) (internal quotation marks omitted). "By contrast, we review *de novo* the IJ's determination of mixed questions of law and fact, as well as the IJ's application of law to facts." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005).

Singh contends that our prior decision required that the case be terminated because our remand order mandated termination. He reasons that, since this Court explicitly stated that the government had not met its burden of proving that Singh was removable under 8 U.S.C. § 1182(a)(6)(E)(i), we must have intended for proceedings to be terminated. However, these statements directly follow sentences setting forth the two narrower holdings of our 2009 decision, and therefore Singh's overly broad reading takes our statements out of context.

Alternatively, Singh argues that the law of the case doctrine prevents the government from establishing removability on remand because, he contends, we considered the untainted

3

evidence in the record and found it inadequate. "The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case . . . .'" *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (quoting *United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002)). However, in our 2009 decision, we did not discuss the probative value of the evidence untainted by error, nor did we limit our remand in any way. Thus, since it cannot be said that we expressly or implicitly ruled on the remaining evidence, the law of the case doctrine does not foreclose reconsideration of Singh's removability.

Singh also argues that the agency's finding that he knew that Bedi was inadmissible is not supported by substantial evidence. When removal proceedings are brought against a noncitizen who has been admitted to the United States, the government bears the burden of establishing that the alien is removable by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A); *see also Woodby v. INS*, 385 U.S. 276, 286 (1966) (holding that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true"). To find Singh removable under § 1182(a)(6)(E)(i), the government must show, by clear and convincing evidence, that he "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." 8 U.S.C. § 1182(a)(6)(E)(i); *see also Chambers*, 494 F.3d at 278.

The agency relied upon our decision in *Chambers* to conclude that Singh was removable because he had actual knowledge of Bedi's unlawful status. Its finding of actual knowledge was based on an inference drawn from: (1) the IJ's factual finding that Singh knew that Bedi had worked in the United States, but was unaware of whether Bedi was authorized to do so; (2)

4

Singh's admission that he and Bedi discussed ahead of time that they should lie to immigration inspectors regarding their whereabouts in Canada; (3) Patten's testimony that Singh had misinformed Patten that Singh was taking Bedi to Singh's house for one day; and (4) Patten's testimony that Singh remained silent when Bedi lied regarding whether he worked in the United States.

While we recognize the deference ordinarily owed to the agency's factual findings, we conclude that the linchpin of its finding—that Singh knew that Bedi lacked authorization to work in the United States and was therefore inadmissible —is utterly unsupported by the record. In making this finding, the IJ purported to rely on Singh's statements, but Singh consistently testified that he had taken steps to ensure that Bedi had his passport with him and that he had no idea whether Bedi had permission to work in the United States. The IJ did not cite, nor does the government identify, any evidence to the contrary. In this case, the IJ's analysis takes a large— and factually unsupported—leap from an inference that Singh knew that Bedi might at some point work in the United States[2] to a further inference that Singh knew that Bedi lacked permission to work and was therefore inadmissible. *See Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." (internal quotation marks and brackets omitted)).

Moreover, in making this finding, the IJ ignored Singh's reasonable explanation (which was not found incredible) that he did not know Bedi well and that this type of inquiry would not be appropriate in his culture, particularly among people who do not know each other well. Ultimately, notwithstanding the deference normally owed to an IJ's factual findings, the

---

[2] It is not clear that Singh had any knowledge about Bedi's employment status or plans, but we will defer to the IJ's factual finding in this respect.

substantial evidence standard "requires a certain minimum level of analysis from the IJ and BIA, as well as some indication that the IJ considered material evidence supporting a petitioner's claim." *Castro v. Holder*, 597 F.3d 93, 99 (2d Cir. 2010) (internal quotation marks omitted). The IJ's factual finding here is deficient in both respects. Where, as here, "there is a complete absence of probative facts to support [an IJ's deduction]," *Siewe*, 480 F.3d at 168, we must reject the inference that Singh knew that Bedi lacked authorization to work, *see id.*

We also reject the second basis for the IJ's inference that Singh had actual knowledge of Bedi's inadmissibility because it is based on a factual determination that we previously rejected: the immigration-fraud-related significance of Singh's lie to immigration inspectors regarding his and Bedi's whereabouts in Canada. In his 2003 decision, the IJ determined that this was reason to find Singh incredible. We rejected the notion that Singh's misrepresentation in this respect was significant for immigration purposes; indeed, we described it as "immaterial and unrelated to any legitimate immigration concern" because Singh had lied "to avoid disclosing his presence at a strip club," and not to mislead immigration inspectors as to Bedi's status. *Singh I*, 553 F.3d at 214. On remand, the IJ again drew an adverse inference—again inferring intent to violate immigration law—from Singh's lie about where he and Bedi had been in Canada. Essentially, the IJ came to the same conclusion using an analysis that this Court previously rejected as a "dubious analytical process to discredit Mr. Singh's testimony," *id.* On remand, the IJ did not explain why he rejected Singh's explanation in favor of the more far-fetched story that Singh undertook a plan to take Bedi out of the United States only to smuggle him back. *See id.* ("The IJ's second stated reason for discrediting Mr. Singh's testimony—that Mr. Singh in fact knew of adult clubs in New York and therefore went to Canada not to visit a club but to smuggle Mr. Bedi—is simply illogical."). Accordingly, we agree with Singh that the law of the case

prevented the IJ from again ascribing immigration-fraud-related significance to Singh's misrepresentation. *See Johnson*, 564 F.3d at 99.

It is unnecessary to address Singh's arguments regarding the IJ's remaining factual findings because, even assuming that they are supported, the error-free findings and the remainder of the record do not support an inference that Singh knew of Bedi's inadmissibility.

In *Chambers*, the case on which the agency relied, the signs that the passenger was not authorized to enter the United States were clearer—Woolcock, Chambers's passenger, had previously been deported, was Chambers's former boyfriend, and was outside the United States when Chambers picked him up. 494 F.3d at 276-77. In the instant case, Bedi was a casual acquaintance of Singh, a Canadian citizen who could ordinarily travel in and out of the United States, and already in the United States when he and Singh left for Canada. Moreover, we find it relevant that Singh took steps to confirm that Bedi had a passport; in the absence of Bedi's alleged intent to work without authorization, that passport would have allowed Bedi to lawfully enter the United States.[3] *See* 22 C.F.R. § 41.2(a). For Singh to have known both that Bedi planned to work without authorization and that such intent would convert a lawful entry into an unlawful entry would have required far more inquiry into the facts of Bedi's life and the technicalities of immigration law than did the situation in *Chambers*.[4] Indeed, it would be

---

[3] We also note, as did the prior panel that Singh (a married man going to a strip club) had a plausible—indeed logical— explanation for lying about where he had been in Canada.
[4] Indeed, in the prior appeal, we pointed out that the "the underlying issue—whether Mr. Singh knew that Mr. Bedi, although a Canadian citizen with permission to enter the United States, was entering the country in violation of law by virtue of his intent to continue working in the United States without authorization"—was "nuanced." *Singh I*, 553 F.3d at 216; *see Tapucu v. Gonzales*, 399 F.3d 736, 739 (6th Cir. 2005) (concluding that the government failed to demonstrate that the petitioner was removable as a smuggler because, even though he knew that a Canadian citizen passenger in his vehicle could not stay permanently in the United States, he believed Canadians could enter the United States freely and that he had done so before).

absurd to require drivers to conduct full-scale investigations to determine potential immigration law violations of their passengers.

The only remaining question is whether remanding the case for further proceedings would be futile. It is well established that we are not strictly bound to our ordinary remand rule when it is clear that remand would be futile. *See, e.g.*, *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 (2d Cir. 2006); *see also NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) (emphasizing that the Supreme Court's decision in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), "does not require that we convert judicial review of agency action into a ping-pong game" and that remand is not required where it "would be an idle and useless formality"). Here, where the record does not support an inference of knowledge, the government has waived any opportunity to submit additional evidence, and the case has already dragged on for over a decade, it is clear that remand for any purpose other than termination would be futile. *See Watson v. Geren*, 569 F.3d 115, 129-30 (2d Cir. 2009).

We have considered the government's remaining arguments and find they are without merit.[5] Accordingly, the petition for review is hereby **GRANTED**. The order of removal is **VACATED**, and the case is **REMANDED** to the BIA with directions to terminate Singh's removal proceedings.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, CLERK

---

[5] We need not decide whether Bedi's statements were properly admitted into evidence since, even when relying on Bedi's statements, the government has not carried its burden of proving that Singh had knowledge of Bedi's inadmissibility.